IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 11-00233 LEK |
| Plaintiff, | ) | |
| vs. | ) | |
| ALOALII TOOTOO, | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO**
**SUPPRESS EVIDENCE, FILED APRIL 12, 2011**

The Indictment charges Defendant Aloalii Tootoo ("Defendant") with knowingly and intentionally possessing with the intent to distribute five grams or more of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B) on or about March 3, 2011. [Indictment, filed 3/17/11 (dkt. no. 9), at 1.] On April 12, 2011, Defendant filed a Motion to Suppress Evidence ("Motion") in which he seeks to suppress all evidence obtained as a result of the March 3, 2011 traffic stop and subsequent warrantless search of his automobile, of the black zippered bag found in this vehicle, and of a white round container found within the black bag during the traffic stop. Plaintiff the United States of America ("the Government") filed its Opposition to the Motion on May 26, 2011, and a notice of supplemental authority on June 17, 2011. Defendant filed his joint Reply to the Government's

Opposition and notice of supplemental authority on June 23, 2011.

This matter came on for hearing on June 29, 2011. During the hearing, the Court received oral testimony from Drug Enforcement Administration ("DEA") Special Agent Richard Jones ("Agent Jones"), DEA Special Agent Joseph Cheng ("Agent Cheng"), and Immigration and Customs Enforcement Special Agent James Chambers ("Agent Chambers"). The Court permitted the parties to file written arguments on the Motion in supplemental memoranda. Defendant filed his Supplemental Memorandum in support of the Motion on July 5, 2011, and the Government filed its Supplemental Opposition on July 7, 2011. After careful consideration of the Motion, the supporting and opposing memoranda, testimony of the witnesses and the arguments of counsel, Defendant's Motion is HEREBY GRANTED for the reasons set forth below.

**BACKGROUND**

The Court provides the following recitation of the relevant events based on the testimony and evidence presented.[1]

**A.    The Surveillance**

On March 3, 2011, an informant reported that: an individual who travels to Hawai`i with methamphetamine to sell, and then returns to California was staying at a hotel in Waikiki;

---

[1] At the hearing, the Court heard testimony regarding some of the exhibits attached to the parties' memoranda, and the Court admitted Defendant's Exhibit 2 in evidence without any objections by the Government. [Minutes, filed 6/29/11 (dkt. no. 48), at 1.]

and the individual was only identified as a Samoan male with the nickname, Low. The informant also gave this individual's telephone number. Agent Jones researched this telephone number and found out that it had appeared on the phone tolls in a DEA wiretap investigation. He asked Agent Cheng to find out whether telephone calls had been intercepted for this telephone number. Agent Cheng discovered that someone using that telephone number had made five telephone calls to Defendant's telephone number, and, during one of these calls, the caller left a voice mail message in which he identified himself as Low and asked that the call be returned. Agent Cheng recognized the caller's name as being Alan Mapuatuli's nickname. Agent Jones ran a criminal history check, and found out that Mr. Mapuatuli had been mentioned in other DEA investigations and had a prior conviction for drug trafficking. He then confirmed that there was a person known as "Alan Mapuatuli" registered at the Imperial Hotel, and who had checked into Room 406 but later transferred to Room 2011. As a result, Agent Jones and others started the surveillance investigation at the hotel, which involved having two task force officers in the hotel security office to observe the camera on the twentieth floor, and agents in vehicles and on foot at strategic locations around the hotel. The purpose of this investigation was to obtain a search warrant for Mr. Mapuatuli's room by stopping anyone who went to his room in an interdiction

stop or consent automobile search, and use that information to establish a basis to search the hotel room.

At approximately 8:00 p.m., agents observed a Samoan male (later identified as Defendant) enter the hotel, take the elevator to the twentieth floor and, at approximately 8:25 p.m., leave the twentieth floor, exit the hotel lobby, and drive away in a white, four-door, Pontiac G-6. Agent Jones testified that he heard Agent Cheng, who was near the hotel for the surveillance, transmit over the radio that he thought he knew that car and thought that DEA had seized it before.

**B.    The Traffic Stop**

A short distance from the hotel, Defendant was stopped by a Honolulu Police Department ("HPD") patrol officer and cited for a traffic infraction, specifically, for a violation of Revised Ordinances of Honolulu ("ROH") § 15-19.30(a) (1990),[2] because there was shell necklace hanging from the rearview mirror. Defendant complied with the patrol officer's directive to produce his driver's license and registration. This license was given to Agent Jones who recognized Defendant's name from the license. Agent Jones approached the vehicle and asked Defendant to step out of the vehicle and to talk to him on the curb. Agent

---

[2] ROH § 15-19.30(a) provides, in pertinent part: "No person shall drive any motor vehicle with any sign, poster or other nontransparent material upon the front windshield . . . of such vehicle which obstructs the driver's clear view of the highway or any intersecting highway."

4

Jones then asked Defendant if he would consent to a search of his vehicle.  Defendant refused, and Agent Jones proceeded to search the vehicle by opening the doors.  He saw a black fanny pack or small bag located on the front passenger seat and opened it.  Inside, Agent Jones found documents with Defendant's name on them, and a little white canister, which he opened and found approximately two ounces of suspected methamphetamine.

### C. **The Wiretap Investigation**

Defendant's telephone calls had been intercepted in 2009 as part of a wiretap investigation conducted jointly by the DEA, and state and other federal agencies.  As of March 3, 2011, Agent Jones had been aware of this investigation, had read one of the affidavits in support of the wiretap application, had known when certain parts of the investigation were going on, had been told by Agent Cheng or another agent that a cooperator had contacted Defendant to purchase methamphetamine which was delivered by somebody else, and was aware that Defendant had been convicted of drug trafficking.

Agent Chambers, in the course of the wiretap investigation in 2009, learned that: (1) in 1999, Defendant was convicted of a drug offense involving methamphetamine in the District of Hawai`i; (2) from June 2009 through September 2009, a wiretap investigation involving the monitoring of telephone calls to and from Defendant's telephone, as well as those of David

5

Feleti and Fouina Toilolo, disclosed over one hundred telephone calls which Agent Chambers believes were related to the sale of narcotics; (3) a person known as Amako Malepeai admitted that he and Mr. Toilolo had given pound quantities of methamphetamine to Defendant; (4) in August 2009, Defendant was recorded in a telephone conversation during which he told a cooperating individual, who had been instructed to call Defendant to order methamphetamine, that Defendant would have someone deliver the drugs and in a subsequent telephone call during which Defendant confirmed the transaction was completed; (5) Mr. Malepeai collected drug proceeds from Defendant on May 24, May 27, June 1, and June 17, 2010; (6) search warrants for Defendant's residence were executed on April 20, 2010 but drugs were not found during the search; and (7) Defendant told Mr. Malepeai that, after his residence was searched on April 20, 2010, he dumped two or three of the four pounds of methamphetamine that Mr. Malepeai had given him. Agent Chambers, however, was not involved in the surveillance on March 3, 2011 and did not participate in Defendant's arrest. He was not contacted that day about his knowledge of Defendant's intercepted telephone conversation, although his coworker, DEA Special Agent Chris Kobayashi ("Agent Kobayashi"), responded to Agent Jones' question about whether the name "Low" was familiar. Agent Kobayashi did ask him if he recalled an intercepted conversation regarding that person.

Agent Kobayashi was not assisting DEA agents in the investigation.

## **DISCUSSION**

Defendant argues that the traffic stop was unlawful because the law enforcement officers did not know his identity until after he was stopped by the HPD patrol officer and presented his driver's license, and because the traffic stop was based on a mistake of law and therefore cannot support reasonable suspicion that Defendant was involved in criminal activity. Under the Fourth Amendment, Defendant is guaranteed to be free from "unreasonable searches and seizures". U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 809-10 (1996) (citations omitted). At a minimum, a traffic stop must be supported by reasonable suspicion "formed by 'specific, articulable acts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000) (citations omitted). A traffic violation is "sufficient to justify an investigatory stop, regardless of whether (i) the violation was merely pretextual, (ii) the stop departed from the regular practice of a particular precinct, or (iii) the violation was common and insignificant." United States v. Choudhry, 461 F.3d

7

1097, 1102 (9th Cir. 2006) (citations to Whren omitted).

A traffic stop which is not supported by a reasonable suspicion that the person detained is engaged in criminal activity violates the Fourth Amendment, and "the evidence gathered as a result of the unconstitutional stop must be suppressed." Lopez-Soto, 205 F.3d at 1106 (citing Wong Sun v. United States, 371 U.S. 471, 484-85, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

Defendant was stopped and cited for a traffic infraction, that is, for driving with a partially obstructed front windshield because of a shell necklace hanging from the rearview mirror and adjacent to the front windshield at the time of the traffic stop. He argues that the patrol officer was mistaken in his belief that driving with a shell necklace hanging from the rearview mirror violated ROH § 15-19.30(a) and therefore, pursuant to United States v. King, 244 F.3d 736, 738-42 (9th Cir. 2001), the patrol officer lacked reasonable suspicion to make the traffic stop. In King, the Ninth Circuit examined a traffic stop based upon an Alaskan traffic ordinance almost identical to the ordinance at hand and concluded that, because the ordinance forbids driving with items "upon" the front windshield and not hanging from the rearview mirror, the officer was mistaken that a violation had occurred. As a result, the Ninth Circuit held that this mistaken belief could not serve as a

8

basis for reasonable suspicion to seize the defendant in a traffic stop. Id. at 739-41.

The Government however correctly points out that, as to the HPD patrol officer, it does not matter if he was mistaken about the violation or that he was directed to make the traffic stop under the pretext of a traffic violation.[3] As long as Agent Jones had reasonable suspicion that Defendant was involved in criminal activity, it is beside the point whether the alleged traffic violation was valid. United States v. Villasenor, 608 F.3d 467, 472 n.5 (9th Cir. 2010) (quoting United States v. Ramirez, 473 F.3d 1026, 1031 (9th Cir. 2007)). To this end, the Government argues that Agent Jones had reasonable suspicion for the traffic stop because Defendant was seen "coming from the hotel room of a suspected drug dealer, was driving a car which had been seized before in another drug investigation and found to contain methamphetamine, and was driving a car associated with two known drug dealers, David Suiaunoa and the defendant." [Suppl. Opp. at 5.] The testimony, however, does not support these assertions. Agent Jones testified that Defendant "went up

---

[3] Agent Jones testified that
> prior to Mr. Tootoo even arriving, it was set up that if the -- if we wanted to have a vehicle pulled over, that we needed a violation to be able to pull the vehicle over. So, yes, we -- I discussed this with the officer. Okay. That before we ever approached the vehicle or turned on the lights, we needed a violation, State violation.

[Hrg. Trans., 6/29/11, filed 6/30/11 (dkt. no. 49), at 26.]

9

to the 20th floor.  A little while later, he came down from the 20th floor and then got into his vehicle and drove off at that point." [Hrg. Trans. at 12.]  Even the DEA investigation report only reflects that Defendant was seen "leaving the area of Room 2011", and not that he was observed leaving the suspected drug dealer's hotel room. [Opp. to Motion, Exh. B at 12.]  As to the Pontiac G-6, Agent Jones testified that, when Defendant drove away, an agent transmitted over the radio that he thought he knew the car, and thought they had seized it before, but the agent did not state when or in what context the vehicle had been seized. [Hrg. Trans. at 13, 31.]  In drawing objective and reasonable inferences from these observations, it can be concluded, at best, that a man drove to the same hotel and took the elevator to the same hotel floor where a suspected drug dealer was known to be staying, and left driving a car that might have previously been seized in a DEA drug investigation.

Based on the evidence presented, together with objective and reasonable inferences from that evidence, the Court CONCLUDES that Agent Jones did not have reasonable suspicion formed by specific, articulable acts to suspect that Defendant was engaged in criminal activity at the time of the traffic stop.

The Government next argues that reasonable suspicion, if not probable cause, existed based on the agents' collective knowledge for both the stop and subsequent searches.  The two

situations in which the collective knowledge doctrine generally applies are:

> The first is "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned." United States v. Ramirez, 473 F.3d 1026, 1032 (9th Cir. 2007). The second occurs "where an officer . . . with direct personal knowledge of <u>all</u> the facts necessary to give rise to reasonable suspicion . . . directs to requests that another officer . . . conduct a stop, search or arrest." Id. at 1033. In both situations, collective knowledge may be imputed only if there has been some "communication among agents." Id. at 1032.

Id. at 475-76 (alterations and emphasis in original). Neither the first nor the second situation apply to Agent Chambers and his investigation because: (1) there is no evidence that Agent Chambers and Agent Jones "were working together in an investigation";[4] and (2) Agent Chambers did not direct either the HPD patrol officer or Agent Jones to stop, search or arrest Defendant. Reasonable suspicion cannot be based, therefore, on facts within Agent Chambers' knowledge. Based on the evidence presented, the Court concludes that the collective knowledge doctrine does not apply. The Court therefore CONCLUDES that the

---

[4] Even assuming, however, that the Government could establish that the facts of this case meet the requirements of the first situation, there is no evidence that Agent Chambers communicated anything. Rather, he testified that he was not contacted about Defendant until after the arrest had been made, and did not participate in the surveillance. The only communication possibly related to Agent Chambers is the exchange between Agents Jones and Kobayashi regarding the name "Low", and this information related to Mr. Mapuatuli, the person under surveillance on March 3, 2011, not to Defendant.

traffic stop violated the Fourth Amendment and that the evidence obtained as a result of the traffic stop must be suppressed. See United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000).

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Suppress Evidence, filed April 12, 2011, is HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 15, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**UNITED STATES OF AMERICA V. ALOALII TOOTOO; CR. NO. 11-00233 LEK; ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE, FILED APRIL 23, 2011**